CARL R. AKER v. JOHN H. LIPSCOMB, Appellant.

Division One, July 31, 1923.

1. **GOOD TITLE: Meaning.** In some contracts the word "good title" may mean marketable title, but where the contract for the purchase of land says that the seller shall deliver to the buyer "a complete abstract of title to said property from the United States Government to this date with certificate by competent abstracters" and "if the title be good, the seller shall deliver to the buyer a general warranty deed," by the words "good title" is meant a title shown to be good by the abstract, and the contract requires the seller to furnish a good record title, and not simply a title which might be shown to be good by adverse possession.

2. ———: **Condition of Performance.** The vendor must always furnish the exact title called for by his contract; and where his contract requires him to furnish an abstract showing a good record title, the furnishing of such a title is a condition precedent to the liability of the vendee to perform.

3. ———: ———: **Time of Essence.** Where the contract requires the vendor to tender a good record title within thirty days after defects therein shown by the abstract are specified, and by its express terms time is made of the essence of the contract, a tender of a good record title must be made within the thirty days, and an offer to show by affidavits title by adverse possession is not within the terms of the contract and is not performance of its covenants.

4. **GOOD RECORD TITLE: Affidavits: Identifying Heirs.** Affidavits may be used to make clear a record title, but not to destroy it. Where the chain of title shows the name of Richard Merritt as

grantee and the record shows that he died leaving six children, one of whom was named Frances, affidavits may be used to show that a subsequent deed executed by Mary F. Dillon was executed by the said Frances Merritt. Likewise, the record title may be perfected by a proper suit to quiet title. But where the contract for the sale of land requires the vendor to tender a good record title, he cannot enforce specific performance unless, by affidavits or suit to quiet title or some other conclusive way, he shows that his warranty deed will convey the interest of said Frances.

5. ———: **Omitted Heirs to Small Tract: Warranty Deed.** Where the vendor contracted to sell 528 acres and to furnish a good record title, and the chain of title shows that Richard Merritt was at one time the grantee of a certain 28-acre tract, and the record shows that he died leaving six children, one of whom was named Elizabeth, the vendor must furnish a record title showing a conveyance by said Elizabeth or a judgment extinguishing her interest in said 28-acre tract, or he cannot enforce performance upon the tender of his warranty deed.

Appeal from Jackson Circuit Court.—*Hon. Samuel A. Dew,* Judge.

AFFIRMED.

*Joseph S. Rust* for appellant.

(1) A deed in which the land is described as the east half of the southeast half of Section 20, is good as a conveyance of the east half of the southeast quarter of Section 20. Secs. 4137, 4139, U. S. Stats. (Barnes Federal Code) 946; Sec. 8057, R. S. 1909; 13 Cyc. 605; An. Gres Boom Co. v. Whitney, 26 Mich. 42; Owen v. Henderson, 16 Wash. 39; Dart v. Barber, 32 Mich. 267; Grady v. Casey, 93 Mo. 595. (2) It being admitted that Richard Merritt owned the land in controversy, that he died in 1840 leaving only six children, and that their names were Elizabeth, Malvina, Washington, Eliza, Richard and Frances, a deed by Mary F. Dillon and husband, executed in 1857, in which she describes herself as a child and heir of Richard R. Merritt, and recites that she is conveying the interest in the land which she inherited from Richard

R. Merritt will be presumed to convey the Frances Merritt interest, and especially after such a lapse of time and where the land is valuable, has been fenced and in adverse occupancy for forty-five years. (3) In view of the value of the twenty-eight acres in controversy, the length of time it has been fenced and occupied adversely, and the number of times it has been conveyed, a deed from Elizabeth Merritt will now be presumed, as would also, if necessary, one from Frances Merritt. 2 C. J. 288; Glasgow v. Mo. Car Co., 229 Mo. 585; Brooks v. Roberts, 220 S. W. 11; Brinkley v. Forsyth, 66 Mo. 175; Dessaunier v. Murphy, 22 Mo. 95; Brown v. Oldham, 123 Mo. 621; Newman v. Studley, 5 Mo. 291; McNair v. Hunt, 5 Mo. 300; Blair v. Maries, 27 Mo. 579. (4) Under the evidence in this case Elizabeth Neely, formerly Merritt, and Frances Merritt are presumed to have been dead since before the beginning of the forty-five years adverse possession of defendant and those under whom he claims. R. S. 1899, sec. 6340; 17 C. J. 116; Johnson v. Johnson, 170 Mo. 34; Walsh v. Met. Ins. Co., 162 Mo. App. 546; Wheelock v. Overshiner, 110 Mo. 100; Flood v. Growney, 126 Mo. 262; Gilroy v. Brady, 195 Mo. 205; Chapman v. Kullman, 191 Mo. 237. The statutory presumption of death does not exclude the common-law presumption. Dickens v. Miller, 12 Mo. App. 413; Winter v. Dodge, 96 Mo. App. 1; Biegler v. Legion of Honor, 57 Mo. App. 419; Allen v. Tyrus, 2 Wash. C. C. 475; Thomas v. School, 7 Gill & J. 385; Innes v. Campbell, 1 Rawle (Pa.) 373; Louisville Bank v. Public School Tr., 83 Ky. 219; In re Buck's Estate, 220 S. W. 716; Cobb v. Royal Neighbors, 219 S. W. 118; Walsh v. Ins. Co., 192 Mo. App. 546. (5) As the contract did not require that the abstract should show a good record title, Lipscomb had a right to have a decree of specific performance if he furnished an abstract of all there was of record, and his evidence showed a good title under the Statute of Limitations. Aker might have contracted for an abstract showing a record title, but he did not. Scan-

300 Mo.—20

nell v. Amer. Soda Co., 161 Mo. 618; Mitchener v. Hole-mes, 117 Mo. 185; Wieman v. Steffens, 186 Mo. 591; Dan-zer v. Moerschel, 214 S. W. 849; Brooks v. Roberts, 281 Mo. 561; Peper v. Union Trust Co., 281 Mo. 562; Real Estate Co. v. Megaree, 280 Mo. 41. (6) Specific perform-ance of a contract to sell land will be decreed even though the title fails as to a small part of the tract, provided that part is not essential to the use of the tract as a whole, the court abating of the purchase price according to the value of the part so failing as to title. Key v. Jennings, 66 Mo. 356.; Hart v. Handlin, 43 Mo. 171; Stoddard v. Smith, 5 Binney (Pa.) 355; Towner v. Tickner, 112 Ill. 217; Fow-ley v. Crow, 37 Md. 51; 39 Cyc. 1408. (7) The court erred in refusing to admit and in striking out evidence of-fered by defendant tending to show adverse possession and title by limitations.

*Denny Simrall* and *James S. Simrall* for respondent.

(1) A deed in which the land is described as the east half of the southeast half of Section 20 does not con-vey the east half of the southeast quarter of Section 20. (2) Where Richard Merritt dies seized and possessed of certain land and the probate proceedings named Elizabeth, Malvina, Washington, Eliza, Richard, and Frances Merritt as his children, a deed from one Mary F. Dillon and husband did not convey the interest of Frances Merritt, the identity of Mary F. Dillon and Frances Merritt not being established either by the deed or the abstract of title; and the interest of Frances Merritt is outstanding; and the title to the land as shown by the abstract is defective. Ives v. Kimlin, 140 Mo. App. 293. (3) The abstract shows no conveyance by Elizabeth Neeley of her interest in the land, and her interest is out-standing, and title as shown by the abstract is defective. (4) The vendor was bound to furnish the kind of a title he agreed to furnish, to-wit, a good title, and show the same by a complete abstract of title; and in failing and refusing to do so, he breached the contract, and the ven-

dee was entitled to rescind and have returned his earnest money. Kling v. Realty Co., 166 Mo. App. 190; Danzer v. Maerschel, 214 S. W. 849; 39 Cyc. 1416, 1518; Wieman v. Steffin, 186 Mo. App. 584; St. Clair v. Hellwig, 173 Mo. App. 660; Austin v. Shipman, 160 Mo. App. 206; Bruce v. Woolf, 102 Mo. App. 384; Thompson v. Dickerson, 68 Mo. App. 535; Rank v. Wickwire, 255 Mo. 42. (5) The vendor, having breached his part of the contract, cannot compel vendee to perform his part of the contract. Rank v. Wickwire, 255 Mo. 42; Rozier v. Graham, 146 Mo. 352; 36 Cyc. 632-F. (6) The vendee cannot be compelled to accept land, title to part of which is good and part defective. He is entitled to all he bargained for. 39 Cyc. 1508; Hill v. Rich Hill Coal Co., 119 Mo. 9; Barthel v. Engle, 261 Mo. 307; Pomeroy on Contracts, pp. 421, 422, sec. 347. (7) The vendor cannot defeat suit to recover the purchase money by offer of title at the trial. 39 Cyc. 2056; Austin v. Shipman, 160 Mo. App. 206.

GRAVES, P. J.—Plaintiff contracted with defendant to purchase of him some 526 acres of land in Lafayette County, Missouri. The contract was in writing, and upon the execution thereof the plaintiff paid the defendant $2,000 under the terms of the contract. Omitting the description of the land and other portions of the contract not in issue in this suit, we have the following as the material portions of the contract.

Plaintiff claims that defendant failed to perfect the title within the time stated, although the plaintiff, through his counsel, pointed out the defects. The action is to recover the $2,000 paid to defendant upon the execution of the contract:

"This contract, made and entered into this 22nd day of January, 1920, by and between John H. Lipscomb, of Jackson County, Missouri, the seller, and Carl R. Aker, of Clay County, Missouri, the buyer, witnesseth:

"That seller has sold and agrees to convey as herein provided the following described real estate in Lafayette County, Missouri, to-wit:

"All in Township Forty-nine (49), Range Twenty-five (25), Lafayette County, Missouri, containing in all five hundred and twenty-six acres (526), more or less, for the price and sum of $50,750 to be paid by the buyer as follows: $2,000 at the signing of this contract, the receipt whereof is hereby acknowledged by the seller as part of the consideration of the sale, the balance whereof is to be paid in the following manner, to-wit: $15,000 cash on delivery of deed as herein provided. The purchaser assumes as part of the purchase price three notes aggregating $2,000 with the interest thereon which will have accrued to March 1, 1920, in all $21,525 and for the balance of purchase price gives his note for $12,225 secured by second deed of trust on the property with interest at six per cent per annum payable annually. The three first deeds of trust and the second deed of trust all maturing on October 1, 1923, and all bearing six per cent interest payable annually. . . .

"The seller . . . shall, within ten days from the date hereof, deliver to the buyer or at the office of James S. Simrall at Liberty, Missouri, a complete abstract of title to said property from the United States Government to this date with certificate by competent abstracters as to taxes, judgments, and mechanics' liens affecting said property. The buyer shall have fifteen days after such delivery of abstracts to examine the same.

"If the title be good, the seller shall deliver to buyer at seller's office a general warranty deed, properly executed and conveying said property free and clear from all liens and encumbrances whatsoever, except as herein provided; the buyer shall then and there pay the balance, if any, of said cash payment, and deliver to the seller the note and deed of trust, if any, hereinbefore provided for, and furnish the seller with insurance policy containing loss clause payable to the seller as interest may appear; the buyer to accept assignment of insurance now in force, paying therefor the unearned value prorated at present current rate.

"If the title is defective, the buyer shall specify the objections in writing to be delivered to the seller at his office in Kansas City, Missouri, within fifteen days after such delivery of the contract; the seller shall have the defects rectified within thirty days from date of delivery of such objections, but in case such defects in the title cannot be rectified within that time, this contract shall be null and void, and the money deposited as aforesaid shall be returned to the buyer and the abstract returned to the seller.

"If the seller has kept his part of this contract, by furnishing good title herein provided, and the buyer fail to comply with the requirements within five days thereafter, then the money deposited as aforesaid is forfeited by the buyer, and this contract may or may not be thereafter operative, at the option of the seller.

"This deal is to be closed March 1, 1920, at which time deed, deed of trust and note secured by second deed of trust are all to be delivered and the balance of the cash payment, $15,000, paid.

"Time is of the essence of this contract.

"In witness whereof, said parties hereunto subscribe their names.

"Executed in duplicate," etc.

Defendant answered (1) by general denial save and except the execution of the contract, and (2) a cross-bill in equity seeking the specific performance of the contract. The reply was such as to meet and put in issue the matters in the answer. Upon a trial before the court plaintiff had judgment for $2,152. The finding was for plaintiff on his petition, and for the plaintiff and against the defendant upon defendant's cross-bill. From such judgment the defendant has appealed. In the briefs, the matters for consideration have been limited, and these matters and the pertinent facts, will be left to the opinion.

I. At the base of this case lies the question as to what kind of a title is called for by the contract in evidence. This question once settled, the case resolves itself

into a simple inquiry as to the facts. The vendor must always furnish the exact title called for by his contract. [Danzer v. Moerschel, 214 S. W. 849; Reeves v. Roberts, 242 S. W. l. c. 958.]

If the contract before us falls within the rule of the Danzer Case, supra, then we only have to go to the abstract of title furnished to determine the liability or nonliability in this case. The contract provides (1) that the seller "shall within ten days . . . deliver to buyer, or at the office of James S. Simrall at Liberty, Missouri, a *complete* abstract of title to said property from the United States Government *to* this date with certificate by competent abstracters as to taxes," etc. (2) The buyer to have fifteen days for examination. (3) If title be good, the seller shall deliver to buyer at seller's office a general warranty deed, at which time the deal was to be closed. (4) If the title is defective, the buyer was to specify objections in writing in fifteen days, and (5) seller shall have defects rectified within thirty days from date of delivery of such objections and if such defects could not be remedied within the thirty days then the contract to be null and void, and the advanced money returned to buyer.

It may be that in some connections the words "good title" means a title other than a record title. [Kling v. Realty Co., 166 Mo. App. l. c. 195.] The cases from this court cited by the Court of Appeals in the case supra, do define a "marketable title" but do not say that "a good title" means "a marketable title." This, however, is by the wayside upon the point in hand. We are to determine the kind of title to be delivered in this case from the wording of the contract. We might concede that in some contracts the words "good title" might mean "marketable title," yet such words might not have that meaning in the contract before us. Here the contract calls for a complete abstract. Fifteen days is given to the buyer to examine it. Then immediately follows these words: If the title be good, the seller shall deliver . . . general warranty deed," etc.

The query is, in what way must it be determined whether or not "the title be good?" From the abstract of title, or from some investigation as to adverse possession? To our mind the words "If the title be good" has and can only have reference to the showing made by the abstract of title. In other words it means a "good title" as appears from the abstract. Stated differently, a good record title, and not a mere marketable title. No other meaning can be given the words, when we take them in the connection found in this contract. A complete abstract was to be furnished. This was to be examined within fifteen days, and if the title "be good" deed was to be delivered and trade closed. In this close connection of the terms the good title in the contract stated, must mean a good title was to be shown by the abstract of title so furnished. In the next paragraph we find the words: "If the title is defective, the buyer shall specify the objections," etc. This clearly means that the defects must be such as can be gathered from and shown by the abstract of title. All language considered, this contract falls within the rule of Danzer's Case, supra. The language there used was "a warranty deed and an abstract showing good title." That is to say, the seller was to furnish "a warranty deed and an abstract showing *good title.*" We construed this language to mean a good title by the record of conveyances; or in other words a record title, as distinguished from a mere marketable title. So we rule in this case. The words "good title" as in the contract used means a record title, and not a title which might be shown by adverse possession. In Danzer's Case, BLAIR, J., cites a great number of cases. His opinion is reported in 7 A. L. R. 1162, and on page 1166 of that report will be found an extended note covering all the later cases. The cases rule (1) that where by the contract the seller is to furnish abstract showing title in him, the furnishing of such an abstract is a condition precedent to the liability of the vendee to perform, and (2) that such abstract must disclose a good record title.

Upon this latter question, the learned annotator at page 1167, says:

"Although, as is subsequently shown, the abstract may be explained, aided, or supplemented in certain respects, so as to show that the record is in truth in the vendor, the general rule is that a contract to furnish an abstract showing title to the land imposes the duty upon the vendor to furnish an abstract showing title of the character covenanted for; and it is very generally held that to comply with this requirement the vendor must exhibit an abstract which on its face or by reference to public records shows that he has record title to the land. A title resting in whole or in part upon parol proof is not sufficient if the purchaser is entitled to a title of record, such title being of a higher character and more desirable than one depending upon extrinsic circumstances to be established by parol evidence."

The long list of cases reviewed by the annotator accord with Danzer's Case. On the strength of Danzer's Case, the Supreme Court of Arkansas overruled their previous rulings. [Hinton v. Martin, 236 S. W. 267; Dalton v. Lybarger, 237 S. W. 694.] We therefore rule that the contract before us requires a good record title and requires this as a condition precedent to the liability of the vendee to perform. Not only so, but as by express terms time is made of the essence of the contract, such good record title must have been tendered within thirty days from the time the specifications of objections were made. It was not so tendered. The performance offered was an offer to show by affidavits adverse possession. This was not within the contract.

II. Having concluded that the contract of sale calls for a good record title, the issue is simple. There is a twenty-eight-acre tract three-fourths of a mile northwest of the railway station at Aulville, to which there is not a clear or good record title.

In the chain of this title was one Richard Merritt. The record shows that upon his death he left a widow and six children, named Elizabeth, Melvina, Washington,

Eliza, Richard, and Frances.  The record fails to show conveyances from Frances Merritt, unless a deed by Mary F. Dillon conveys such interest.  If Frances Merritt was in fact 'Mary Frances Dillon, or Mary F. Dillon, as the deed gives the name, then affidavits showing this identity would have sufficed.  Affidavits can be used to make clear a record title, but not to destroy it. In Reeves v. Roberts, 242 S. W. at page 957, we said:

"The term 'merchantable title,' as used in this contract, is the same as 'marketable title,' as used in the books.  It is true that a marketable title may be shown by affidavits, which connect up the showing made by the record title.  Title by adverse possession may perhaps be so shown, and thus a marketable title shown.  Affidavits may show the heirs, where the record title rests in one deceased.  Change of name by marriage may be shown, where the title rested at one time in a given person, and the name of such person was afterward changed by marriage.  So, too, affidavits may show the person to have been single when an instrument was executed.  In fact, affidavits may serve many purposes in showing a marketable title by abstract; but they must serve to explain defects in the record title, and not to change the real record title.  In this case the purport of the affidavits is to change the record title, and not to supplement it.  They are used for no other purpose.  Mistakes and errors in recorded deeds should not be corrected in this way. For this reason, if not for others, the judgment below should be sustained."

The title under discussion in the Reeves Case was a merchantable title, but so far as showing the identity of the person, where an initial has been used, as in this case, we take it the same rule would apply.  To be plain, Mary F. Dillon may have been Mary Frances Merritt, one of the six heirs of Richard Merritt, and this identity could have been shown.  It was not shown, and the vendor even refused to bring suit to quiet title, so that a record title might have been shown. Until this flat refusal.

the purchaser and his counsel were asking that this be done.

No conveyance is shown from Elizabeth Merritt, one of the heirs, nor is there explanation of this discrepancy. As to this the purchaser and his counsel suggested the quieting of title. As stated above this was flatly refused.

In the situation this case falls squarely within the rule of the Danzer Case, supra. By the terms of the contract the purchaser was to have the $2,000 payment returned, if the seller failed to present an abstract of title showing good title. This was not done.

The judgment is right and is affirmed. All concur.