J. Hughes Powell v. O. D. Dorton, Appellant.—12 S. W. (2d) 453.

Division Two, December 18, 1928.

*L. E. Bates* for appellant.

*Claud D. Hall* for respondent.

HENWOOD, C.—Powell, as plaintiff, filed this suit against Dorton, in the Circuit Court of Montgomery County. The petition is in two counts; first, to cancel a deed to a farm in Montgomery County; and, second, in ejectment and for damages for rents. and profits. The trial court found the issues for plaintiff on both counts, and rendered judgment accordingly. The case is here for review on defendant's appeal from that judgment. The following is a correct statement of the pleadings, taken from respondent's brief:

"In the first count of plaintiff's petition plaintiff alleges that he entered into a written contract with the defendant on the 21st of November, 1922, to exchange his 240-acre farm in Montgomery County, Missouri, for 533 acres of land in Miller County owned by the defendant, and plaintiff, was to receive also a certain stock of paints and merchandise in Excelsior Springs, Missouri, and Powell and wife were to execute a note for $1000 and secure the same by a third deed of trust on the Miller County farm he was getting in exchange from defendant Dorton. Plaintiff alleges that all the papers to be executed under the contract were, as provided by the contract, placed in escrow with one J. A. Robinson, in Kansas City. These papers were a warranty deed from Powell and wife to Dorton, covering the 240-acre Montgomery County farm involved in this suit, a deed of Dorton and wife to Powell covering the Miller County farm, and the $1000 note of Powell and wife to Dorton, together with a third deed of trust on the Miller County farm securing the said $1000 note. The plaintiff also alleged that abstracts were to be furnished by the respective parties covering the respective properties. That the deeds required by the contract were placed with said Robinson. That plaintiff furnished his abstract and fully complied with the terms of said contract, but plaintiff charged that the defendant failed to furnish an abstract as required by the contract. The allegation in regard to the requirements as to the abstract and title was as follows:

" 'That it was further agreed between plaintiff and defendant that each, within ten days from date of the execution of said contract, would deliver at the office of J. A. Robinson complete abstracts of title to their respective properties from the United States Government to the date of said contract, including certificates in full as to taxes, judgments or other liens, and each party should ' have three days from said date of delivery for examination of abstracts and report to the other party defects therein, if any, in writing, at the office of J. A. Robinson, and if upon examination it was found that the title to any of the properties being exchanged was defective the party who was to have conveyed such property should have such defects rectified within a reasonable time, which was not to exceed thirty days from the date of written notice of such defects, and that in case such defects were not rectified within such time, no extension of time was given, said contracts should be null and void at the option of the party not in default and the abstracts should be returned to their respective owners.

" 'That, long after the time provided in said contract, defendant caused to be sent to Montgomery City an abstract or abstracts purporting to show the title to said Miller County land, and which abstract showed said title in O. D. Dorton to be defective.

" 'Plaintiff states that said contract was never completed between plaintiff and defendant, but, notwithstanding such fact, defendant wrongfully and fraudulently obtained possession of the deed executed by plaintiff and conveying to defendant the said real estate in Montgomery County, Missouri, and wrongfully and fraudulently caused the same to be recorded in the office of the Recorder of Deeds of Montgomery County, Missouri, and that same now appears of record in said office in book 122, at page 362, and said deed and record of said deed casts a cloud upon plaintiff's title to said land.'

"The petition further alleged that defendant wrongfully obtained possession of said $1000 note and, in June, 1924, obtained a judgment against plaintiff for the amount of said note and interest, and that defendant took possession of plaintiff's farm in Montgomery County the first of March, 1923, and has since retained possession and collected the rentals therefrom. That the reasonable rental value of said farm was six dollars per acre per annum.

"The plaintiff prayed for a decree in the first count canceling the deed to his 240-acre Montgomery County farm and praying 'that the defendant have judgment against the plaintiff for the amount received by plaintiff from the stock of merchandise, and in addition thereto, for such sums as defendant has showed he has paid on the principal and interest of the mortgage note of $8,400 and for taxes and improvements made by defendant on and to said farm and that plaintiff have judgment for the value of the rents and profits collected by defendant from said farm in the sum of $2,880, and that such money judgments offset one to the other to the amount of the lesser judgment, and for such other judgments and decrees as to the court seems just.'

"On the second count of plaintiff's petition he alleged that he was entitled to possession of the 240-acre Montgomery County farm; that the defendant unlawfully entered into such premises and unlawfully withholds the same from the plaintiff, to the plaintiff's damage in the sum of $2,880, and plaintiff therefore demanded judgment for the recovery of the premises and $2,880 damages for unlawfully withholding the same from plaintiff, and six dollars per acre for annual rents and profits from the rendition of judgment until possession of the premises is delivered to plaintiff.

"The defendant's answer consisted of a general denial except as to matters specifically admitted. The answer admitted the execution of the contract and alleged the exchange of properties provided for in the contract had been duly made and claimed that defendant had become the owner of plaintiff's 240 acres of land in Montgomery County, and defendant had become the holder and owner of plaintiff's $1000 note, payable June 1, 1923, secured by a third deed of trust on said 533-acre farm conveyed by said exchange to plaintiff;

that plaintiff sold the stock of merchandise conveyed by defendant to plaintiff, part of it at retail and most of it in bulk, after defendant sued plaintiff on said $1000 note in the Circuit Court of Clay County. That plaintiff appropriated the proceeds of said merchandise to his use and that defendant obtained judgment against plaintiff on said $1000 note in the Circuit Court of Clay County.

"Defendant further alleged in his answer, in general terms, that if there had been a defect in the abstract of title to the Miller County farm, plaintiff 'waived' all of his right to have the same corrected, and, further, that plaintiff, with full knowledge of all the facts before the filing of this suit, had 'elected' to have said contract remain in force and effect, and had in effect barred himself from recovering in this action to set aside said contract.

"The defendant further alleged in his answer that the consideration for the performance of said contract was an entire consideration and that plaintiff, who was the defendant in the suit on the $1000 note in the Circuit Court of Clay County, had denied the right of plaintiff to enforce the note in said suit, and that said suit on said note, which was decided in favor of plaintiff Dorton in said suit, and in which the court had jurisdiction of the parties and subject-matter, was *res adjudicata* of the cause and a bar to the action set up in the plaintiff's petition in this case.

"There was a general denial filed to the defendant's answer."

The written contract for the exchange of properties between the plaintiff and defendant was offered in evidence, and there is no dispute as to its execution, or as to its terms and provisions, as alleged in plaintiff's petition. And, as we read the record, there is no dispute as to the material, controlling facts of this case, except as to some of the facts relied upon by defendant in support of his contention that plaintiff waived certain provisions of the contract.

It appears from plaintiff's testimony that, within the time specified in the contract, he delivered the abstract of title to the Montgomery County farm to defendant for examination, and a duly executed deed to the farm, to Robinson, but never did, at any time, authorize Robinson to turn the deed over to defendant, nor did he authorize defendant to obtain possession of the deed. Defendant did get possession of the deed and had it recorded in Montgomery County. (The deed, which was offered in evidence, was recorded on March 9, 1923, according to the certificate of the recorder.) Defendant collected the rents on the farm, which was occupied by a tenant, and the farm had a rental value of six dollars per acre during years 1923 and 1924. The abstract of title to the Miller County farm was not delivered to plaintiff until about March 15, 1923, and, on March 22, 1923, he sent a copy of his attorney's opinion on the abstract to defendant and another copy of the same to Robinson. (This opinion,

which was offered in evidence, points out numerous defects in defendant's title to the Miller County farm.) Plaintiff received a letter from Robinson "in which Robinson stated that the objections were unwarranted and uncalled for; that the abstract was alright." Failing to hear from defendant, plaintiff went to Excelsior Springs to see defendant, and defendant "just laughed at him about the objections raised by his attorney." The abstract of title to the Miller County farm was never submitted to plaintiff again, and he never received from Robinson or anyone else the deed to the Miller County farm, but that deed and, also, the third deed of trust given by plaintiff to secure the payment of plaintiff's $1000 note, which were left with Robinson, were recorded in Miller County by someone. Plaintiff never, at any time, took charge of the Miller County farm, and never attempted to sell it, nor to have any negotiations with anybody concerning it, after getting the abstract of title and his attorney's opinion thereon. Prior to that time and pending the consummation of the contract, he hired Guy T. Godfrey to look after the farm, "if he got it," and paid Godfrey six dollars in advance, on defendant's promise to repay him, if he did not get the farm. And, in January, 1923, he made a trip with defendant to north Missouri and tried to sell the farm, and also tried to sell it to a Mr. Buckingham in Kansas City. Plaintiff was with defendant in Miller County, pending the consummation of the contract, on the day set for a foreclosure sale under a prior deed of trust on the Miller County farm, but made no arrangements with defendant or anyone else about calling off the sale. Defendant called off the sale, as plaintiff thought, because defendant was "afraid plaintiff might buy it in." Plaintiff did not remember having any conversation with the sheriff, who was acting as trustee in the foreclosure proceeding, concerning an arrangement whereby the sale was called off. Defendant got possession of the $1000 note, which was executed by plaintiff and his wife and left with Robinson, as a part of the consideration for the exchange of properties between plaintiff and defendant, and filed suit thereon, in the Circuit Court of Clay County on June 18, 1923, the note being due on June 1, 1923. In that suit, plaintiff filed a separate answer and counterclaim, and later, an amended separate answer and counterclaim, in which he denied any consideration for the note, and set up, as additional defenses, the same matters, in substance, as are alleged in his petition for affirmative relief in this suit; also, a separate answer for plaintiff's wife, in which she denied the execution of the note, and any consideration therefor, supported by plaintiff's affidavit. Prior to the trial of that suit, the answers of both plaintiff and his wife were withdrawn, and, upon their failure and refusal to further plead, judgment was rendered against them in the sum of $1,107.45. Plaintiff testified that the answers in that suit

were withdrawn upon the advice and suggestion of Judge Hughes of the Circuit Court of Clay County, who said, in the presence of defendant's attorneys, "If you have been defrauded out of your land the thing to do is to withdraw all your answers and go back to Montgomery County and bring suit down there."

On November 22, 1922, plaintiff took possession of the stock of paints, as provided for in the contract, and put his agent in charge of the same. He replenished the stock, from time to time, while selling the goods at retail, and sold the stock in bulk on July 4, 1923, which time "it inventoried $2,485." He kept a full and complete account of sales and expenses, and "got net out of the paint about $1200," including $200 in the bank at the time he sold out, and had, at that time, about $1500 in outstanding accounts, of which amount defendant owed him "about $500 or $600." He attempted to make an adjustment of this account with defendant in connection with his $1000 note, but was unable to do so.

In addition to the contract and the deed to the Montgomery County farm, plaintiff offered in evidence a certified copy of an abstract of title to the Miller County farm (made by the "Abstracter" of Deeds of Miller County), showing certain conveyances in the chain of title, including two deeds of trust in the sum of $7500 and $2000, respectively, a warranty deed to defendant and his wife, the warranty deed from defendant and his wife to plaintiff, the deed of trust in the sum of $1000, given by plaintiff and his wife to defendant, and a sheriff's deed under foreclosure of the deed of trust given by plaintiff and his wife, in which defendant is shown to be the grantee or purchaser. The warranty deed from defendant and his wife to plaintiff and the deed of trust from plaintiff and his wife to defendant were delivered to Robinson for his keeping pending the consummation of the contract between plaintiff and defendant, and the certified copy of the record title to the Miller County farm shows that these two conveyances were recorded June 16, 1923.

Defendant did not testify at the trial of this case. He offered in evidence the deposition of Guy T. Godfrey, who testified that he was engaged in the real estate business in the town of Eldon, in Miller County. On June 16, 1923, he was at the court house in the town of Tuscumbia, in Miller County, and on that day the Miller County farm was to be sold under foreclosure of a deed of trust held by Lee Smith of Kansas City. He heard a conversation between Smith, defendant, plaintiff, and Sheriff Kinder of the county, who was acting trustee under the deed of trust. Smith said the payment of the interest and costs would stop the sale, and plaintiff said he was short of money, and "it was agreed among them" that defendant would advance the money necessary to stop the sale, and plaintiff said he and defendant would have a settlement for the money advanced by

defendant. He further testified that, soon after the deal between plaintiff and defendant, he saw plaintiff at Eldon, and plaintiff agreed to pay him five dollars per month for looking after the Miller County farm, and that, on the day of the foreclosure sale at Tuscumbia, he saw plaintiff at Eldon before they went to Tuscumbia, and plaintiff paid six dollars on account.

Defendant also introduced in evidence the deposition of Sheriff Kinder, who testified that, on the day he was to sell the Miller County farm under Smith's deed of trust, Smith said he would stop the sale for the payment of the interest and costs. Plaintiff said, if defendant would advance the money, he would pay back the money or deed the land back to defendant, and defendant agreed to that arrangement. He further testified that he afterwards sold the Miller County farm under the deed of trust given by plaintiff and his wife to defendant.

L. E. Bates, attorney for defendant in this case, testified that he was attorney for Dorton in the suit again Powell and his wife on the $1000 note in the Circuit Court of Clay County, and that he was present at all times when the matter in controversy was discussed, and did not hear Judge Hughes make any statement concerning the rights of Powell and his wife, and that the answers filed by Powell and his wife in the suit on the $1000 note in the Circuit Court of Clay County were withdrawn in accordance with an agreement between Dorton's attorneys and Powell's attorneys for the dismissal of another suit filed by Dorton against Powell in that court. On cross-examination, Bates said the abstract of title to the Miller County farm was in the hands of the holder of the first mortgage at Rochelle, Illinois, but, following the deal between plaintiff and defendant, it was in the possession of Robinson and defendant "for a considerable period of time," and, thereafter, he sent it back to Illinois. He did not know anything about the original facts in the case, but examined the correspondence that defendant had concerning the title to the Miller County farm and the opinion of plaintiff's attorney relating thereto. He did not notify plaintiff whether or not his attorney's objections to the title were well taken.

Defendant also offered in evidence the pleadings and record entries in his suit on plaintiff's $1000 note, in the Circuit Court of Clay County. The petition follows the usual form in suits on promissory notes. The answers of Powell and his wife, in that suit, set up the defenses above indicated, Powell's separate answer having attached thereto a copy of the exchange contract. The reply to Powell's separate answer admitted that the note was given as part of the consideration provided for in the exchange contract, and denied all other affirmative allegations contained in said answer.

This suit was filed on August 28, 1924, and tried at the January term, 1925, in the Circuit Court of Montgomery County. At the April term, 1925, the court rendered judgment for plaintiff in the following form:

"Now on this 4th day of May, 1925, this cause having been heretofore heard and submitted to the court, the same is called for decision and finding; both plaintiff and defendant being present by attorney, and the court fully advised in the premises doth find that on November 21, 1922, plaintiff and defendant entered into a contract in writing for the exchange of properties; and that thereafter in compliance with the terms of said contract plaintiff executed a general warranty deed to defendant under date of the —— day of December, 1922, which described ·and purported to convey the following real estate situate in Montgomery County, Missouri, to-wit:

" 'The north half of the north half of section 21, and the south half of the southeast quarter of Section 16, all in Township 48 north, Range 4 west.

"The court further finds that said deed under the terms of said contract were deposited by plaintiff with one J. A. Robinson, together with a promissory note for $1000 executed by plaintiff and payable to defendant and a mortgage securing the same; and which deed under the terms of said contract was to be held in trust by the said J. A. Robinson until the completion of the contract, and the said J. A. Robinson was authorized to deliver said deed, and the note and mortgage, on completion of said contract, and not otherwise.

"The court further finds that the contract of exchange was never completed between plaintiff and defendant, but that notwithstanding such fact defendant wrongfully and fraudulently obtained possession of the deed executed by plaintiff and conveying to defendant the real estate in Montgomery County, Missouri, and wrongfully and fraudulently caused the same to be recorded in the office of the recorder of deeds of Montgomery County, Missouri, and the same now appears of record in said office in book 112 at page 362, and said deed and the record of said deed casts a cloud upon plaintiff's title to said land.

"The court further finds that pending completion of said contract and as a part thereof defendant delivered to plaintiff the following personal property, as described in the contract between plaintiff and defendant:

" 'The stock of paints, glass, wallpaper, all other merchandise in the stock at 250 East Broadway, Excelsior Springs, Missouri; the fixtures are included in this stock of merchandise.'

"And the court finds that plaintiff received said personal property, and that the same was of the value of $3000; and that defendant is entitled to return thereof. or the cash value thereof.

"The court further finds under the second count of plaintiff's petition that defendant is guilty of trespass and ejectment in the petition alleged and that the plaintiff hath sustained damages by reason of said ejectment in the sum of $3000; and that the monthly value of the lands in the petition described is the sum of $100.

"It is therefore considered, ordered and adjudged by the court that the deed under date of the —— day of December, 1922, executed by the plaintiff and conveying to defendant the following real estate situate in Montgomery County, Missouri, to-wit:

"The north half of the north half of Section 21, and the south half of the southeast quarter of Section 16, all in Township 48 north, Range 4 west,

and recorded in the Recorder's office for Montgomery County, Missouri, in book 122 at page 362, be and the same is cancelled and for naught held; and it is further ordered and adjudged by the court that defendant being entitled to the return by plaintiff of the value of the personal property received by plaintiff in the sum of $3000; and that plaintiff·have and recover of defendant $3000 for his damages by reason of the ejectment from his said lands; that the one off-set the other; and it is further ordered and adjudged by the court that plaintiff have judgment for the monthly value of said premises, until said plaintiff be restored to the possession thereof, in the sum of $100; and that the costs be adjudged against the defendant.

"And the court doth further order that an execution issue to restore to the plaintiff the possession of said lands aforesaid, and for the monthly value thereof, and for costs."

Further reference to the pleadings, the contract in question, and the evidence, will be made in the discussion that follows.

I. Appellant's brief contains no assignment of errors, and in that part of his brief designated as "Points And Authorities," he makes no direct reference to the errors complained of. While three of his so-called "Points" may be said to amount to an indirect challenge of the trial court's findings and judgment, the other four so-called "Points" are mere abstract statements of the law. It is questionable, therefore, as contended by respondent, whether appellant has substantially complied with Rule 15 of this court which provides that "the brief for appellant shall distinctly allege the errors committed by the trial court," and Section 1511, Revised Statutes 1919, which says that "each party shall . . . make out and furnish the court with a clear and concise statement of the case, and the points intended to be insisted on in argument." However, in view of our previous rulings that errors indicated under the designation of "Points And Authorities" may be treated as taking the place of a formal assignment of errors, and,

in order that appellant may not be deprived of a hearing on purely technical grounds, we will assume the burden of considering this case on its merits.

II.  Under Point 1 in his brief, appellant contends that the written opinion of respondent's attorney on the abstract  of title to the Miller County farm was not admissible in evidence, and that, with such opinion excluded from the evidence, respondent failed to establish any defects in the title, and, therefore, failed to show appellant's non-compliance with the contract.

As to the abstracts of title to be furnished by both parties, their examination, notice of defects, correction of defects, etc., the contract reads as follows:

"It is further agreed that the parties to this contract are each within ten days from date of execution of this contract to deliver at the office of J. A. Robinson, complete abstracts of title to their respective properties as designated in Schedules 'A' and 'B' from the United States Government to this date, including certificates in full as to taxes, judgments or other liens.  Each party shall have three days from said date of delivery, for examination of abstracts, and report to the other party defects therein, if any, in writing, at the office of J. A. Robinson.  If upon examination it is found that the title to any of the properties herein being exchanged is defective, the party to this contract who is to convey or have conveyed said property, agrees to have said defects rectified within a reasonable time, which is not to exceed thirty days from date of written notice of such defects.  In case such defects are not rectified within said time and no extension of time is given, this contract shall be null and void at the option of the party not in default, and the abstracts shall be returned to their respective owners."

It is apparent at once that, under the express provisions of the contract, respondent's action in furnishing appellant and Robinson with a copy of his attorney's opinion, pointing out defects in the abstract of title to the Miller County farm, was in strict compliance with the contract, and that his attorney's opinion showing the defects in appellant's title was clearly admissible on that issue.  Moreover, appellant's utter failure to rectify the defects in his title, or to attempt so to do, leaves appellant's non-compliance with the contract, in that particular, established by the undisputed facts in the case.  This court was confronted with similar situations, and so ruled on similar contentions, in the cases of Aker v. Lipscomb, 300 Mo. 303, 253 S. W. 995; Reeves v. Roberts, 242 S. W. 956; Danzer v. Moerschel, 214 S. W. 849.  See also, Thompson v, Dickerson, 68 Mo. App. 535,

III.  Appellant makes the further contentions, under Points 2, 3, 4, 5 and 7, in his brief, that plaintiff *waived* the right to have the defects in defendant's title corrected, and *elected* to stand on the contract, and that, by reason of such *waiver* and *election*, he is not entitled to the relief sought in this suit.

In his answer, defendant pleads the defenses of waiver and election in the following language:

"Defendant further answering states that had there been any defect  in the abstract of title to the said 533-acre farm in Miller County, plaintiff *waived* all of his right to have the same corrected by defendant.

"Defendant further answering states that plaintiff with full knowledge of all the facts had before the filing of this suit *elected* to have the said contract remain in full force and effect and has by said *election* barred himself from recovering in this action to set aside said contract."  (Italics ours.)

It is elementary that "waiver" and "election" are affirmative defenses, and that the pleader must state the facts relied upon to establish such defenses, in order to make the same available.  A mere glance at the answer in this case, above quoted, discloses that appellant merely pleaded the conclusion that "plaintiff waived all of his right to have the same (defects in defendant's title) corrected by defendant," and the conclusion that "plaintiff elected to have the said contract remain in full force and effect," without even attempting to state the facts upon which such conclusions were based.  But, aside from appellant's failure to sufficiently plead these defenses, it is our opinion that the greater weight of the evidence is against him on these defenses, and we so rule.  Respondent's handling of the stock of paints, his efforts to negotiate a sale for the Miller County farm, his employment of an agent "to look after" the farm, and his assistance, if any, in preventing a sale of the farm under a foreclosure, pending the consummation of the contract, all represent acts done in accordance with his rights under the contract, and in the expectation that appellant would perform his part of the contract and that he (respondent) would become the owner of the farm.  And, while it may be conceded that he waived his right to have the abstract of title to the Miller County farm within the time specified in the contract, it certainly does not follow, as appellant contends, that he waived his right to have the abstract of title examined and to have the defects in the title rectified.  To so hold would permit appellant to profit by his own delay in delivering the abstract of title to respondent for examination, and respondent's prompt notice to appellant of the defects in the title conclusively shows that he did not waive his right to a good title and his right to rescind the contract on

the ground of a defective title, as expressly provided for therein. In this connection, see Danzer v. Moerschel, supra, 1. c. 850.

IV. Finally, appellant contends, under Point 6 in his brief, that the judgment in his suit on respondent's $1000 note, in the Circuit Court of Clay County, closed the door of adjudication on the questions involved in this suit, and that, by reason thereof, respondent is barred from further litigating such questions.

It is true that, under the general rule of *res adjudicata* as applied in this State, respondent would be estopped from litigating any rights which were proper matters of defense in the former suit against him on his $1000 note, regardless of his withdrawal of his answer containing such defenses, and regardless of whether he chose to interpose such defenses. But, as indicated in the authorities relied upon by appellant, there are certain well-established exceptions to this general rule. And, in this instance, the exception, and the reason therefor, are plain and unmistakable. By Section 1179, Revised Statutes 1919, it is provided that "suits for the possession of real estate, or whereby the title thereto may be affected, . . . shall be brought in the county where such real estate, or some part thereof, is situated." Manifestly, the Circuit Court of Clay County had no jurisdiction over the subject-matter involved in this suit, and any judgment rendered by that court, affecting respondent's title to the Montgomery County farm, or affecting his right to the possession thereof, would have been void. [Castleman v. Castleman, 184 Mo. 432, 83 S. W. 757.] This, of course, explains why Judge Hughes suggested that respondent withdraw his answer and counterclaim in the note suit in Clay County, and that he file suit against appellant in Montgomery County to settle any question involving the title or possession of the Montgomery County farm, if he did, as respondent testified, make any such suggestion. It is perfectly clear that the doctrine of *res adjudicata* has no application in this case, and we accordingly rule against appellant on his contention to the contrary.

The findings and judgment of the trial court, as to appellant's failure to comply with the contract, by correcting the defects in his title to the Miller County farm, and as to his wrongful possession of the Montgomery County farm and the deed thereto, are supported by positive and undisputed evidence. The findings and judgment are likewise supported, as to the value of the stock of paints received by respondent under the contract, and as to the amount of damages sustained by respondent as the result of appellant's wrongful possession of the Montgomery County farm, and as to the monthly value thereof, pending restoration. Thus, the parties are placed *in statu quo*.

The judgment is right, just and equitable. It is accordingly affirmed. *Higbee* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.