**L. C. FRITTS d/b/a B & C Leasing Service, Plaintiff-Appellant,**

v.

**CLOUD OAK FLOORING COMPANY, a corporation, Defendant-Respondent.**

No. 9130.

Missouri Court of Appeals, Springfield District.

March 2, 1972.

---

White & Dickey, Clyde R. Allemann, Springfield, for plaintiff-appellant.

Miller, Fairman, Sanford, Carr & Lowther, Henry W. Westbrooke, Jr., Springfield, for defendant-respondent.

STONE, Judge.

In this jury-waived, court-tried action for unlawful detainer [§ 534.030],[1] plaintiff L. C. Fritts d/b/a B & C Leasing Service (the landlord) sought restitution of certain leased premises, to wit, a tract in Springfield and the business building situate thereon, together with double the monthly rents and profits of said premises [§ 534.330], because (so it was alleged in plaintiff's petition filed on January 9, 1970) "the lease . . . was terminated at January 1, 1970, for failure of defendant [Cloud Oak Flooring Company, a corporation, the lessee-tenant] to pay the rental reserved." Plaintiff-landlord appeals from the judgment for defendant-tenant.

The leased premises were demised by a comprehensive, particularized instrument dated as of July 3, 1965, which included thirty numbered paragraphs (spread on eighteen pages of the transcript), only the relevant portions of which are noted here. *Paragraph 3* provided for a ten-year term beginning on November 1, 1965 or, if the building and improvements to be constructed on the leased premises were not then ready for occupancy, on the fifth day after such building and improvements were made ready.[2] In *paragraph 4* the tenant contracted to pay a rental of $1,330 "promptly on the first day of each month in advance." In *paragraph 15* the parties agreed that if the tenant "shall default in the payment of rent herein reserved, when due, and fails to cure said default within ten (10) days after written notice thereof" from the landlord, the latter might at once, or within six months thereafter (but only during continuance of such default), termi-

---

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. The landlord said that the building "was occupied the last half of December," 1965.

nate the lease by written notice to the tenant. *Paragraph 25* stated that no failure of the landlord to exercise any power given him under the lease, or to insist upon strict compliance by the tenant with its obligations thereunder, and no custom or practice of the parties at variance with the terms of the lease should constitute a waiver of the landlord's right to demand exact compliance with the terms thereof. And *paragraph 26* declared that "[t]ime is of the essence of this agreement."

The record does not reveal (and it is not here material) when the tenant corporation first failed to make prompt payment of the stipulated monthly rental. However, the landlord's testimony indicates that ere long after occupancy the monthly payments became delinquent and that, in endeavoring to collect them, he had talked from time to time with the then managing officers of the tenant corporation, at first with one Trask and after his departure with one Caterino, and had become "quite concerned over the fact that they were obviously in pretty serious financial difficulties." By the middle of December 1968 the rentals were "about three months past due," and an addendum to the original lease agreement was negotiated with N. E. Breuer, who had assumed management of the tenant corporation. In this addendum dated December 19, 1968, the tenant agreed to pay the rental for that month forthwith, "to pay succeeding installments of rental when due, time being of the essence with respect to such payments," and to liquidate

rental arrearages for October and November 1968 by adding $443.33 to each of the next six monthly payments. The addendum further provided that the original lease agreement "shall be considered amended as respects *paragraph 15*, in that any failure of [tenant], for any reason whatsoever, to pay installments of rental on or before the date such installment shall be due, shall result in the immediate termination of [tenant's] right to possession of the premises demised" and that *"no notice of any kind of such failure to make payments shall be required to be given and that time is of the essence* in the making of such payments" (hereinafter referred to as the *no notice* and *essence* provisions). (Emphasis ours.)

Thereafter, the monthly rentals for December 1968 and for the calendar year of 1969, together with the rental arrearages for October and November 1968, were paid by the tenant's checks issued on the dates and in the sums, and honored by the drawee bank in Springfield on the dates, as detailed in the marginal tabulation.[3] The course of conduct followed with respect to the issuance and handling of these checks throughout 1969, as reflected by the testimony and the photographic copies of the checks in evidence, was for each such check, on the date it was drawn, to be mailed by the tenant to the landlord at his Springfield office, to which it usually would be delivered the following day, and for the landlord thereafter to transmit such

3.

| Date of Check | Amount | Rent For | Arrearage | Date Paid |
|---|---|---|---|---|
| 12/19/68 | $1,330.00 | Dec. 1968 | - - | 12/20/68 |
| 12/31/68 | 1,773.33 | Jan. 1969 | $443.33 | 1/ 8/69 |
| 1/31/69 | 1,773.33 | Feb. 1969 | 443.33 | 2/11/69 |
| 3/ 3/69 | 1,773.33 | Mar. 1969 | 443.33 | 3/12/69 |
| 4/ 1/69 | 1,773.33 | Apr. 1969 | 443.33 | 4/ 9/69 |
| 5/ 2/69 | 1,773.33 | May 1969 | 443.33 | 5/12/69 |
| 6/ 2/69 | 1,773.33 | June 1969 | 443.33 | 6/10/69 |
| 7/ 8/69 | 1,330.02 | July 1969 | .02 | 7/16/69 |
| 8/ 4/69 | 1,330.00 | Aug. 1969 | - - | 8/13/69 |
| 9/ 2/69 | 1,330.00 | Sept. 1969 | - - | 9/11/69 |
| 10/ 1/69 | 1,330.00 | Oct. 1969 | - - | 10/ 8/69 |
| 11/ 7/69 | 1,514.57 * | Nov. 1969 | - - | 11/19/69 |
| 12/ 3/69 | 1,330.00 | Dec. 1969 | - - | 12/10/69 |

* The landlord said that inclusion of an additional $184.57 in this payment was to reimburse him for an increase in ad valorem taxes on the leased premises, "I think."

check, endorsed "For Deposit Only," to a bank in Atlanta, Georgia, where it was credited to the landlord's account and returned through customary banking channels to the drawee bank in Springfield for payment.[4]

Although only two of the twelve checks (i. e., those dated 12/31/68 and 1/31/69), for monthly rentals accruing during 1969 were mailed in time for them to have been delivered to the landlord on the first business day of the month, all of those checks were accepted, retained and deposited without protest or complaint. With respect to some of the monthly rentals during 1969 which were not paid promptly, either the landlord or Dave Bernard, his assistant who was "in charge of . . . the administration of accounts receivable and accounts payable and all other attendant functions," talked over the telephone with either Breuer or Harold M. Horn, Jr., secretary of the tenant corporation; but neither the landlord nor Bernard could recall when or how many such calls had been made. Bernard said that "my usual approach . . . was I merely contacted the individual and asked when we might expect to receive the money due us . . . . There might be a slight change in the wording at times, but nothing in a demanding sort of way." Breuer characterized the only call he received from the landlord, which concerned the July 1969 payment, as "a friendly inquiry." And in outlining his talks with the landlord, Horn stated that "most of the conversations had to do with general business conditions, with especially the future and the outlook for our company . . . ." Furthermore, the record is utterly barren of evidence that, at any time during the entire year of 1969, the landlord *either* undertook to forfeit the leasehold estate for the tenant's failure to pay any monthly rental on the first day of the month in advance *or* notified the tenant that such forfeiture would be demanded if the stipulated rental for any subsequent month were not paid on the precise date it became due.

The tenant's check for the January 1970 rental was dated, drawn and mailed on January 5, 1970, a Monday. In explanation of the failure to prepare and mail that check sooner, Breuer pointed out that the previous Thursday was New Year's Day, that only he and Horn were at the tenant's place of business for "part of the day" on Friday, January 2, and that Monday, January 5, was the "first full workday" in January. Passing these excusatory comments, we find from the testimony of the landlord and his assistant that the tenant's January rental check was delivered to the landlord's place of business on or about January 6, 1970; that, prior to such delivery, there had been no demand for payment of the January rental and the tenant had not been contacted with respect thereto; and that the January rental check was in the landlord's possession before he indicated any intention to seek forfeiture of the leasehold estate and termination of the tenant's possession. The January rental check was returned to the tenant on January 7 or 8, and this unlawful detainer action was instituted on January 9. In the course of trial on September 29, 1970, the landlord stated that the tenant's rental checks for February 1970 and subsequent months had been received "very well on time" and had been retained and cashed on the theory that they were "half of the damages [the landlord's counsel] felt might be due . . . for unlawful detainer." § 534.330.

In considering the case at bar, we bear in mind that the landlord did not seek statutory forfeiture in a landlord-tenant action under Chapter 535, which afforded a remedy judicially characterized as "simple and expeditious" [B–W Acceptance Corp. v. Benack, Mo.App., 423 S.W.2d 215, 216] and also "fair and equitable" [Carbonetti v. Elms, Mo.App., 261 S.W. 748, 751], but that he chose to invoke the harsh rem-

---

4. This substantially accounts for the lapse of time between the date of issuance and the date of payment of each check.

**12**

edy of common-law forfeiture seeking not only to terminate the leasehold estate but also, by proceeding in unlawful detainer, to recover double damages and double rents and profits. § 534.330; Waring v. Rogers, Mo.App., 286 S.W.2d 374, 379. Under such circumstances, the landlord is held to scrupulous observance of every requirement of the common law,[5] unless waived by agreement. Independence Flying Service, Inc. v. Abitz, Mo., 386 S.W.2d 399, 404(4); Carbonetti v. Elms, supra, 261 S. W. at 751.

The initial question briefed and argued by counsel here is as to whether or not the common-law requirements prerequisite to forfeiture of a leasehold estate were waived by the hereinbefore-quoted no notice and essence provisions of the addendum dated December 19, 1968. The landlord's counsel vigorously insist that the common law requirements were so waived, while the tenant's attorneys earnestly argue to the contrary. In our view of the case, we find it unnecessary to discuss and determine this issue on its merits. For if it be assumed *arguendo*, as we do without so deciding, that the landlord's position on this issue is correct, we are convinced that the record nevertheless impels affirmance of the judgment nisi.

Primarily resting their plea for reversal upon the essence provision of the addendum, the landlord's counsel point to our general discussion in Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527, 533(5), concerning the meaning and enforceability of a contractual essence provision. Our understanding of the law in this area remains the same. However, the critical and determinative inquiry in the case at bar is in another legal area, to wit, waiver, more particularly as to whether the landlord's course of conduct during the period from execution of the addendum in December 1968 to his return of the tenant's rental check in January 1970 was such as to have permitted a finding by the trial court that the landlord had waived the tenant's strict compliance with the essence provision in payment of monthly rentals.

▇▇▇ The applicable and governing principles are clearly stated in the following excerpts from authoritative works. "Where a contract expressly provides that 'time shall be of the essence,' or that in case of nonpayment of an installment on time the rights of the obligor shall be forfeited, or that in such case the obligee may declare a forfeiture, performance on time is thereby made a condition of the obligor's reciprocal rights under the contract. But the courts do not favor forfeitures . ." and "[t]o avoid such a forfeiture, the courts have been very astute to find and declare the existence of a waiver or an estoppel." 3A Corbin on Contracts § 754, p. 489. "Any expressions or conduct of the obligee that leads the obligor reasonably to believe that performance on time will not be insisted on will operate as a waiver of the time condition, as to subsequent defaults as well as to antecedent ones. Such a belief by the obligor may be reasonable where it is induced by the obligee's receipt of a series of delayed payments without objection." Id. § 754 at pp. 494–495.

"[A] general rule has been established that where a lessor acquiesces in the making of belated payments of rent, in departure from the express terms of his lease in that regard, for a length of time and under circumstances establishing a course of dealing upon which the lessee may, in the light of such experience, rely, the lessor cannot forfeit the lease for nonpayment of rent so represented, but must, if he desires to make use of the right to forfeit for that

---

5. "To work a forfeiture of a leasehold estate at common law for non-payment of rent there must be a notice of forfeiture and a demand for the payment of the rent" and "the demand for rent must be made precisely on the very day when the rent becomes due, and for the precise amount due." Waring v. Rogers, Mo. App., 286 S.W.2d 374, 379(20); Independence Flying Service v. Abitz, Mo., 386 S.W.2d 399, 404(5).

purpose, first warn the lessee of his intention as to future payments, and that the lessee is entitled to relief against a forfeiture otherwise attempted." 49 Am.Jur.2d Landlord and Tenant § 1080, p. 1042. Cases supporting this statement are collated in annotation 31 A.L.R.2d 321, 376–383 [§ 16].

"Either at law or in equity a stipulation regarding time, though otherwise of the essence, may be waived or the injured party may elect to continue the contract in spite of the breach . . . ." 6 Williston on Contracts (3rd Ed.) § 856, p. 228. " 'Though parties to a contract may, by explicit provision therein, make time of the essence, they may nevertheless later waive that provision by their conduct. However, in such a case time may again be made of the essence by either party on the giving of reasonable notice to that effect.' . . . 'Where time of performance is of the essence of the contract, a party who does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement will be taken to have waived it altogether.' " Id. § 856 at p. 232.

The foregoing principles have been recognized as applicable and controlling in many reported cases (a) in which landlords, by their course of conduct in accepting· tardy rental payments, were held to have waived their contractual right to forfeit the leasehold estate for subsequent late payments where they had not given their tenants appropriate warning of intention to enforce such right of forfeiture for future tardiness in payment,[6] and (b) in which sellers, by their course of conduct in similarly accepting tardy payments under installment sale contracts were held to have waived their contractual right of forfeiture for subsequent late payments without first having given the buyers similarly appropriate warning.[7]

In the case at bar, each of the tenant's rental checks for the ten months immediately preceding January 1970 had been received by the landlord after the first day of the month, and each of those checks had been accepted, retained and deposited without protest or complaint. Prior to return of the January 1970 rental check, none of those ten consecutive tardy monthly rental payments had evoked a threat or even a suggestion of forfeiture on the part of the landlord, and none of them had moved him to notify or warn the tenant of his intention to seek a forfeiture of the leasehold estate for any future tardiness in payment. By the mere act of including an essence provision in the addendum of December 19, 1968, the landlord did not immunize or insulate himself from the legal effect and consequence of that course of conduct.

We have not overlooked the fact that, as emphasized by the landlord's counsel, paragraph 25 of the lease provided that no failure of the landlord to insist upon strict compliance by the tenant and no cus-

---

6. *Cases affirmatively stating that leases contained essence provisions*: Oastler v. Wright, 201 Ga. 649, 40 S.E.2d 531, 534 (5) ; Famous Permanent Wave Shops, Inc. v. Smith, 302 Ill.App. 178, 23 N.E. 2d 767, 770(2), 771(6). *Other lease cases*: Lauch v. Monning, 15 Ohio App. 2d 112, 239 N.E.2d 675, 676(1) ; Bates & Springer, Inc. v. Nay, 91 Ohio L.Abs. 425, 187 N.E.2d 415(1) ; DeSales Street Corp. v. Dragon, Inc., D.C.Mun.App., 163 A.2d 623(2) ; Duncan v. Malcomb, 234 Ark. 146, 351 S.W.2d 419, 421(2) ; Carpenter v. Wilson, 100 Md. 13, 59 A. 186 (1). For additional lease cases, see annotation 31 A.L.R.2d 321, 376–383 [§ 16].

7. *Cases involving installment sale contracts containing essence provisions*: Bogad v. Wachter, 365 Mo. 426, 283 S.W.2d 609, 613–614(4) ; Triplett v. Davis, 238 Ark. 870, 385 S.W.2d 33, 34(2, 5) ; Stevinson v. Joy, 164 Cal. 279, 128 P. 751, 752–753 (3) ; Watkins v. Warren, 122 Cal.App. 617, 10 P.2d 500, 502(3) ; Sliwinski v. Gootstein, 234 Mich. 74, 208 N.W. 47, 49(3) ; Tolmachoff v. Eshbaugh, 41 Ariz. 318, 18 P.2d 256(2) ; Smith v. Carleton, 185 Or. 672, 205 P.2d 160, 165(1, 2) ; Johnson v. Berns, 111 Or. 165, 224 P. 624, 626(1) ; General Motors Acceptance Corp. v. Herlong, 248 S.C. 55, 149 S.E. 2d 51, 53(3) ; Lang v. Parks, 19 Ill.2d 223, 166 N.E.2d 10, 12–13(2–4) ; Davies v. Dayton, 298 Ill. 201, 131 N.E. 578, 580(2) ; Porter v. Harrington, 262 Mass. 203, 159 N.E. 530, 531–532(3–6). See 1 Restatement of Contracts § 300, Illustration 1, l. c. 445.

**14** ▬▬▬▬▬▬▬▬▬▬

tom or practice of the parties at variance with the terms of the lease should constitute a waiver of the landlord's right to demand exact compliance with the terms thereof. However, "[p]arties to a contract cannot, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision." 3A Corbin on Contracts § 763, p. 531. See Searoad Shipping Co. v. E. I. duPont de Nemours & Co., 5 Cir., 361 F.2d 833, 837 [note 18], certiorari denied 385 U.S. 973, 87 S.Ct. 511, 17 L.Ed.2d 436; Bricker v. Great Western Accident Ass'n., 161 Iowa 61, 140 N.W. 851; General Electric Co. v. National Contracting Co., 178 N.Y. 369, 70 N.E. 928.

▬▬▬ Bearing in mind that forfeitures of leaseholds are viewed with disfavor [Dodier Realty & Inv. Co. v. St. Louis Nat. Baseball Club, 361 Mo. (banc) 981, 988, 238 S.W.2d 321, 323(1); 24 A.L.R.2d 683, 690; Wilson v. Watt, Mo., 327 S.W.2d 841, 851(12)], we have no doubt but that the landlord's course of conduct subsequent to execution of the addendum raised a submissible issue of fact as to whether or not he had waived the tenant's strict compliance with the essence provision in payment of monthly rentals [cf. Porter v. Harrington, 262 Mass. 203, 159 N.E. 530, 531(5)]—an issue which, of course, was initially for determination by the trial judge.

▬▬▬ With no specific findings of fact requested or made, all factual issues were ruled in favor of defendant-tenant by the general finding and judgment. Rule 73.01(b); § 510.310(2); McCullough v. Newton, Mo., 348 S.W.2d 138, 142(2); Galemore v. Mid-West National Fire & Casualty Ins. Co., Mo.App., 443 S.W.2d 194, 200(9). And although, in this court-tried action, it is our duty to review the case upon both the law and the evidence as in suits of an equitable nature, we are directed to accord due regard to the superior opportunity of the trial court to judge of the credibility of the witnesses and we are enjoined from setting aside the judgment nisi unless it is clearly erroneous. Rule 73.01(d); § 510.310(4); Del Monte Corporation v. Stark & Son Wholesale, Inc., Mo.App., 474 S.W.2d 854, 858–859(8), and cases there cited.

Suitable respect for these governing principles of appellate review constrains affirmance of the judgment for defendant. It is so ordered.

TITUS, C. J., and HOGAN, J., concur.