829 F.2d 651
 In re PROGRESSIVE FARMERS ASSOCIATION, Debtor.
SOUTH CENTRAL ENTERPRISES, INC., and Edwin M. Lipscomb
Farms, Inc., and Caleb Lipscomb, and Ellen
Lipscomb, Appellants,
v.
Richard FARRINGTON, Trustee, Appellee.
 No. 86-2340.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1987.
Decided Sept. 23, 1987.
Rehearing and Rehearing En Banc Denied Oct. 23, 1987.
 
 David F. Sullivan, Springfield, Mo., for appellants.
 Lincoln J. Knauer, Springfield, Mo., for appellee.
 Before ROSS,* and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 South Central Enterprises, Inc., Edwin M. Lipscomb Farms, Inc., and Caleb and Ellen Lipscomb (appellants) appeal from a district court order[1] affirming a decision of the bankruptcy court granting rescission of a contract for the sale of an agricultural supply business from appellants to the Progressive Farmers Association. We affirm.
 
 I.
 
 2
 This action arises out of appellants' sale of their agricultural supply business (Aggieville) in early December 1975 to the Progressive Farmers Association[2] (hereinafter Progressive), a Missouri farm cooperative. Aggieville is located in the Missouri towns of Springfield, Liberal, and Monett, and consists of a farm supply store, a grain elevator, a fertilizer plant, and associated agricultural enterprises. At the time of the sale, Aggieville was operated and owned in part by Caleb Lipscomb (Lipscomb). Lipscomb continued to manage Aggieville after it was sold to Progressive.
 
 
 3
 The contract for the sale of Aggieville, which was evidenced by three written agreements and promissory notes, was a "package deal." The contract required Progressive to pay $60,000 down on the purchase price of Aggieville and the remaining $840,000 in monthly installments of interest and principal, which were due on the first of each month with a five-day grace period. The contract further provided that appellants were to furnish Progressive with abstracts of good and marketable title to the real estate. If Progressive objected to the abstracts of title submitted and if appellants were unable or unwilling to cure such objections, the contract could be annulled at Progressive's option.
 
 
 4
 After signing the contract, appellants tendered to Progressive abstracts of title to the Aggieville real estate. Progressive verbally objected to the abstracts to the Liberal real estate, alleging that four of the lots in the center of the Liberal property were not entirely owned by appellants and that a building not subject to the contract stood in part on the Liberal real estate. After Progressive complained to appellants about the defect in the title, it agreed to appellants' proposal that the defect be cured after the resolution of a lawsuit involving the Liberal real estate.[3] In December of 1976 that lawsuit was settled and a short time thereafter Progressive again complained about the alleged defect in the title to the Liberal property. Appellants, however, failed to cure the defect in the title. About this same time, Progressive began tendering its installment payments on the promissory notes. Despite the payment schedule set forth in the notes, Progressive consistently made late payments well after the 6th of the month.[4] Appellants never declared or threatened to declare a default on any of the notes until May of 1977.
 
 
 5
 Progressive failed to tender the May installment payment on its May 6, 1977, due date. On May 9, 1977, appellants, stating that Progressive was in default on its obligations, foreclosed their security interest in Aggieville. Progressive filed its petition in bankruptcy court four days later. At no time did Progressive ever tender to appellant the May 1977 installment payment, nor did appellants ever tender to Progressive the deeds to any of the Aggieville real estate.
 
 
 6
 On May 25, 1977, appellants filed in the bankruptcy court their petition for the reclamation of all of the Aggieville property. The trustee in bankruptcy counterclaimed, seeking rescission of the contract for the sale of Aggieville from appellants to Progressive.
 
 
 7
 The bankruptcy court granted the trustee's prayer for rescission on the ground that appellants' failure to deliver good and marketable title to the Aggieville real estate was a material breach of the agreement that entitled Progressive to rescind. Appellants appealed, and the district court[5] vacated the bankruptcy court's judgment. The court held that Progressive's failure to tender the May 1977 installment was not a default entitling appellants to foreclose their security interest in Aggieville. It remanded the action for further findings, however, so that the bankruptcy court could determine whether Progressive was otherwise in default on or before May 9, when appellants foreclosed on their security agreement in Aggieville. Specifically, the court stated that it was remanding for a finding as to whether Progressive was, on May 9, 1977, actually insolvent. The district court instructed that if the bankruptcy court on remand found that Progressive was insolvent or otherwise in default of its obligations under the security agreement before the time of foreclosure, appellants were entitled to foreclose their security interest in Aggieville, and the trustee's counterclaim for rescission should be denied.
 
 
 8
 Some sixty-five months later, the bankruptcy court[6] issued a memorandum opinion finding that Progressive was neither in default of its obligations under the security agreement nor insolvent on May 9, 1977. In re Progressive Farmers Ass'n, 50 B.R. 525 (Bankr.W.D.Mo.1985). Therefore, in accordance with the directions of the district court the bankruptcy court held that appellants were not entitled to foreclose and granted the trustee's motion for rescission. The bankruptcy court, based on the findings of the initial bankruptcy proceeding, entered judgment in favor of Progressive in the amount of $485,825.10 plus interest. Appellants again appealed. The district court found that there was no substantial evidence to support the bankruptcy court's finding that Progressive was not insolvent on May 9, 1977. The court held, however, that appellants had waived their right to declare forfeiture on any other ground, including insolvency, since they had failed to assert any other grounds other than nonpayment in their notice of forfeiture and petitions for reclamation. The district court therefore affirmed the bankruptcy court's finding that Progressive had a right to rescind the contract due to appellants' material breach of the Aggieville contract by failing to transfer good and marketable title to the four lots in Liberal, Missouri. The district court further upheld the bankruptcy court's ruling concerning the trustee's right to recover $458,825.10 plus interest from appellants. This appeal followed.
 
 II.
 
 9
 A. Jurisdiction.
 
 
 10
 The first issue that must be addressed is the jurisdiction of this court to decide this dispute. Appellants argue that the bankruptcy court erred in asserting jurisdiction over the proceedings after the case was remanded by Judge Collinson due to the Supreme Court's intervening decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case, the Supreme Court found unconstitutional the vesting of the district court's bankruptcy jurisdiction over bankruptcy judges, who are not Article III judges, in the context of the bankruptcy court's adjudication of state law claims. Id. at 87-88, 102 S.Ct. at 2880. Appellants assert that the questions of insolvency and anticipatory breach, which the district court instructed the bankruptcy court to make a determination as to on remand, were questions of state law and required the exercise of judicial power beyond the authority of a bankruptcy judge in light of the holding in Northern Pipeline.
 
 
 11
 The present action was commenced under the Bankruptcy Act of 1898, the Bankruptcy Reform Act not having been enacted until 1978.[7] The Supreme Court's holding in Northern Pipeline, however, reaches only the grant of independent jurisdiction to a bankruptcy court under the statute enacted in 1978. It does not deal with the question of the validity of the derivative jurisdiction exercised by bankruptcy referees under the Bankruptcy Act of 1898. Northern Pipeline, 458 U.S. at 80 n. 31, 102 S.Ct. at 2876 n. 31. The Court in Northern Pipeline concluded only that:
 
 
 12
 28 U.S.C. Sec. 1471 (1976 ed., Supp. IV), as added by Sec. 241(a) of the Bankruptcy Act of 1978, has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.
 
 
 13
 458 U.S. at 87-88, 102 S.Ct. at 2880.
 
 
 14
 The controlling jurisdictional provision under the 1898 Act states that:Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant * * *.
 
 
 15
 11 U.S.C. Sec. 46(b) (emphasis added).
 
 
 16
 We find that appellants consented to the summary jurisdiction of the bankruptcy court and therefore cannot now raise the issue of the bankruptcy court's jurisdiction over a counterclaim that is reasonably related to the claim submitted by appellants. See Floro Realty & Inv. Co. v. Steem Elec. Corp., 128 F.2d 338, 340 (8th Cir.1942). Appellants voluntarily submitted to the bankruptcy court their petition for the reclamation of Aggieville. The trustee in bankruptcy then filed an answer and counterclaim in which he prayed for rescission of the contract. Appellants then responded to the trustee's counterclaim by means of a reply that addressed the merits of the trustee's contentions but which did not raise any jurisdictional objection or defense. Appellants did not make any jurisdictional objection at trial. It was not until four months after trial that appellants made their first objection to jurisdiction.
 
 
 17
 Accordingly, we conclude that the bankruptcy court on remand properly exercised jurisdiction over the proceedings.
 
 
 18
 B. Rescission of the Aggieville Contract.
 
 1. Law of the Case
 
 19
 Appellants next argue that the district court erred in holding that bankrupt was entitled to rescission of the Aggieville contract. Appellants assert that once the district court found the bankruptcy court's determination that Progressive was not insolvent on the date of foreclosure to be clearly erroneous, it was required by "the law of the case," set out by Judge Collinson in his remand order, to hold that appellants were entitled to foreclose their security interest in Aggieville and deny the trustee's counterclaim for rescission. We do not agree.
 
 
 20
 On remand, the bankruptcy court found that Progressive was not insolvent on May 9, 1977. It also found that Progressive was not in default on any terms, condition, or obligation imposed upon it by the various security agreements. On appeal, Judge Clark set aside as clearly erroneous the bankruptcy court's finding that Progressive was not insolvent, holding that the bankruptcy court had failed to utilize the correct test of insolvency and erroneously applied the test which it did use. Appellants argue that under the law of the case set out by Judge Collinson on his remand order, namely, "that if bankrupt were insolvent on May 9, 1977, appellants were excused from the duty of tendering title to the real estate, and the trustee's counterclaim for rescission must be denied," the district court was required to deny the trustee's counterclaim for rescission once it found Progressive to be insolvent.
 
 
 21
 "The law of the case" doctrine generally requires that a decision on a former appeal be followed in any subsequent proceedings in that court or a lower court unless evidence subsequently introduced is substantially different or the decision is clearly erroneous and works manifest injustice. See Liddell v. State of Missouri, 731 F.2d 1294 (8th Cir.), cert. denied, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984); United States v. Unger, 700 F.2d 445 (8th Cir.), cert. denied, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983); Continental Bank & Trust Co. v. American Bonding Co., 630 F.2d 606, 608 (8th Cir.1980). The doctrine is a rule of practice rather than a command to the courts. Otten v. Stonewall Ins. Co., 538 F.2d 210, 212 (8th Cir.1976).
 
 
 22
 As we see it, the law of the case doctrine has no application in this case. Judge Collinson interjected the question of Progressive's insolvency vel non on his own motion. He said nothing about the doctrine of waiver of grounds for forfeiture or foreclosure. In the event, Judge Clark's ultimate holding treated the question of Progressive's insolvency as irrelevant inasmuch as appellants had waived it by failing to assert it in its complaint for foreclosure. Given the tortuous (and inexcusably prolonged) procedural path this case has traversed, we are loath to read into Judge Collinson's order more than appears there.
 
 2. Waiver
 
 23
 Appellants next argue that the district court erred in finding that they had waived their right to declare forfeiture on the ground of insolvency. The district court found that since appellants failed to assert any ground other than nonpayment in their notice of forfeiture and petition for reclamation, they had waived their right to declare forfeiture on any other ground. Appellants assert that no principle of law required them to designate each ground of default in their notice of foreclosure.
 
 
 24
 The remedy of forfeiture under Missouri law is a harsh remedy and is not favored by the courts. In re Estate of Kraeuchi, 729 S.W.2d 566, 568 (Mo.App.1987); Housing Auth. of City of Mansfield v. Rovig, 676 S.W.2d 314, 316 (Mo.App.1984). A covenant permitting forfeiture will be strictly construed against the party seeking forfeiture, Frank v. Dodd, 130 S.W.2d 210, 215 (Mo.App.1939), and both the letter and spirit of the law must be complied with before a court will permit forfeiture. Rovig, 676 S.W.2d at 316. See State v. Jones, 637 S.W.2d 337, 338 (Mo.App.1982).
 
 
 25
 The bankruptcy court on remand found that appellants' ground for acceleration and forfeiture was based solely on alleged default in payments. The court stated that "the notice delivered on May 9, 1977, and the testimony offered at the 1977 hearing demonstrates clearly that Lipscomb's attempt to accelerate was based upon an alleged default in payment and upon no other ground." Op. at 23. The court noted that while the language of the notice of foreclosure[8] is broader, it can be fairly read as simply detailing the remedies Lipscomb intended to utilize because of the default in payment. This finding was affirmed on appeal by the district court.
 
 
 26
 Substantial evidence exists to support the finding that appellants relied solely on a default in payment in declaring a forfeiture. The record reveals that appellants had notice of Progressive's financial troubles as early as the spring of 1976 but failed to declare a forfeiture until May of 1977. In January of 1977, moreover, Caleb Lipscomb took active control of the Aggieville operation and had full access to Aggieville records, including the authority to pay all bills, but waited until he received notice that he would no longer have checkbook authority over Aggieville to declare Progressive in default on its payments. Furthermore, appellants failed to assert any ground other than nonpayment in their notice of forfeiture and their petition for reclamation. Based on such evidence, we cannot say that the bankruptcy court's finding that appellants relied solely on default in payment in declaring forfeiture is clearly erroneous.
 
 
 27
 Under Missouri law the expression of a specific ground in the notice of forfeiture or declaration of default precludes the later assertion of additional grounds. Independence Flying Service, Inc. v. Abitz, 386 S.W.2d 399 (Mo.1965); Rovig, 676 S.W.2d at 317. See also Morris v. Reed, 510 S.W.2d 234, 240 (Mo.App.1974) (once insurer denies liability on a given ground, it may not thereafter defend on different grounds). In Abitz, the Missouri Supreme Court held in a landlord-tenant dispute involving a question of forfeiture that the assertion of one ground of forfeiture precluded the right to rely on another ground even though it existed at the same time. Abitz, 386 S.W.2d at 404. Accordingly, because appellants relied solely on nonpayment in declaring a forfeiture, they are now precluded from declaring forfeiture on any other ground. We therefore need not address the issue of whether Progressive was insolvent at the time of foreclosure.
 
 
 28
 The next issue that must be addressed is whether appellants were justified in declaring a forfeiture due to Progressive's late payment.
 
 
 29
 Appellants argued at the initial bankruptcy trial that Progressive was in default of its contractual obligation because it failed to tender the May 1977 installment payment on or before May 9, 1977. The bankruptcy court found that by previously accepting Progressive's late payments appellants had waived their right to payment by the 6th of the month and that the contract was thereby modified to permit Progressive a reasonable time in which to make the monthly payments. The district court affirmed, concluding that the findings were supported by substantial evidence. We agree.
 
 
 30
 In Fritts v. Cloud Oak Flooring Co., 478 S.W.2d 8, 12 (Mo.App.1972), the court stated:
 
 
 31
 "Where a contract expressly provides that 'time shall be of the essence,' or that in case of nonpayment of an installment on time the rights of the obligor shall be forfeited, or that in such case the obligee may declare a forfeiture, performance on time is thereby made a condition of the obligor's reciprocal rights under the contract. But the courts do not favor forfeitures ..." and "[t]o avoid such a forfeiture, the courts have been very astute to find and declare the existence of a waiver or an estoppel." 3A Corbin on Contracts Sec. 754, p. 489. "Any expressions or conduct of the obligee that leads the obligor reasonably to believe that performance on time will not be insisted on will operate as a waiver of the time condition, as to subsequent defaults as well as to antecedent ones. Such a belief by the obligor may be reasonable where it is induced by the obligee's receipt of a series of delayed payments without objection." Id. Sec. 754 at pp. 494-495.
 
 
 32
 The court further stated that where a party acquiesces in the making of belated payments, in departure from the express terms of the contract, for a length of time and under circumstances establishing a course of dealing upon which the party may rely, the party cannot declare a forfeiture, but must, to make use of the right to forfeit, first warn the other party of his intentions to make use of the right as to future payments. Fritts, 478 S.W.2d at 12-13.
 
 
 33
 Appellants clearly acquiesced in Progressive's late payments. Progressive consistently made late payments on the notes, some as much as twenty to twenty-five days late, to which appellants made no objection. In order to declare a forfeiture because of late payments, appellants were required to first give notice of such intent. Having failed to do so, they waived their right to declare such a forfeiture. Consequently, Progressive's failure to tender the May 1977 installment payment by May 9, 1977, was not a default entitling appellants to foreclose their security interest in the Aggieville property.
 
 
 34
 The next question is whether Progressive was entitled to rescind the contract due to a material breach by appellants.
 
 
 35
 There is no dispute among the parties that marketable title to four lots of the Liberal tract was never obtained by appellants. Lipscomb himself admitted that he knew of the defects in the title. The dispute is whether this constituted a material breach of the contract.[9] For a breach of a contract to justify rescission, it must relate to a vital provision going to the very substance or root of the agreement and cannot relate simply to a subordinate or incidental matter. McCullough v. Newton, 348 S.W.2d 138, 142 (Mo.1961); B & B Equipment Co., Inc. v. Bowen, 581 S.W.2d 80, 85-6 (Mo.App.1979); Hartley v. Williams, 287 S.W.2d 129, 135 (Mo.App.1956).
 
 
 36
 Under Missouri law a vendor must always furnish the exact title called for by his contract. Aker v. Lipscomb, 300 Mo. 303, 253 S.W. 995, 996 (1923); Hartley, 287 S.W.2d at 134. In Hartley, the vendor failed to furnish an abstract showing merchantable title, as required by the contract. The Missouri Court of Appeals held that this failure was a breach which went to the very root of the contract and warranted rescission. Id. at 135.
 
 
 37
 A similar situation is present here. The contract provided that appellants were to furnish Progressive with title for all the Aggieville property free and clear of any and all liens and encumbrances. No deeds, however, to any of the real estate were ever tendered to Progressive because the parties agreed that the real estate would not be transferred until all the titles were marketable. It is clear from this that both parties believed that deeding title free and clear of any encumbrances to all of the Aggieville property was a provision going to the very root of the agreement. The record further reveals that although notice of the defect was not communicated in writing to appellants, notice was timely communicated and Lipscomb was aware of its importance. Lipscomb knew that Progressive refused to take title to any of the real estate until the Liberal tract could be deeded free and clear. Based on this evidence, we conclude that appellants were guilty of a material breach that entitled Progressive to rescind the contract.
 
 
 38
 C. Damages.
 
 
 39
 Appellants also argue that the district court erred in sustaining the bankruptcy court's finding regarding the amount of damages awarded to Progressive. The bankruptcy court's ruling on the issue of damages is a thorough and detailed analysis of the factual situation between appellants and Progressive.[10] As an appellate court, our scope of review over a damage award is narrow and we may not reverse except for a manifest abuse of discretion. See American Business Interiors Inc. v. Haworth, Inc., 798 F.2d 1135 (8th Cir.1986). We cannot say that the bankruptcy court abused its discretion in its ruling on damages.
 
 
 40
 We have carefully reviewed appellants' other assertions of error and find them to be without merit. Accordingly, we affirm the judgment of the district court affirming the bankruptcy court's decision granting rescission of the Aggieville contract.
 
 
 
 *
 The Honorable Donald R. Ross was an active judge of the Eighth Circuit on the date this case was submitted, but took senior status on June 13, 1987, before the decision was filed
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 Progressive was organized as a farm cooperative under Missouri law. Progressive claimed to be the direct link between the farmer and the farmer's supplier, cutting out the middle man, with the result that the farmer could reduce his costs by joining Progressive and buying supplies directly from the association. The primary emphasis of Progressive, however, was on the sale of "Estate Builder" securities. Progressive promised large payoffs for those farmers who invested money in these securities. In reality the investment was a classic "Ponzi" scheme, one in which the victim pays the money up front in return for expected benefits that never materialize. The principals behind the Progressive organization were convicted of SEC violations. In the course of its operation, however, Progressive did acquire some legitimate businesses, one of which was Aggieville
 
 
 [3]
 Caleb Lipscomb was an owner of only a one-third interest of the four lots located in Liberal, Missouri. His two sisters owned the other two-thirds interest. The alleged problem with clearing title was an existing dispute between Caleb and his sister, Erlene Lasley
 
 
 [4]
 Payment on the February note was made on February 28, 1977; the March payment was made on March 31, 1977; and the payment due in April was made on April 18, 1977
 
 
 [5]
 The Honorable William R. Collinson, United States Senior District Judge for the Eastern and Western Districts of Missouri
 
 
 [6]
 The Honorable Jack Jones, now deceased, issued the original bankruptcy opinion, while the case on remand was heard by his successor, The Honorable Joel Pelofsky
 
 
 [7]
 Unless otherwise indicated, all statutory references are to the Bankruptcy Act of 1898 as amended and in effect at the date of filing. Likewise, Bankruptcy Rule references are to the old Bankruptcy Rules
 
 
 [8]
 Appellants' notice of foreclosure states:
 "[T]he undersigned do hereby give notice to Progressive Farmers Association that by reason of default in the terms of said security agreements and promissory notes that the undersigned have and will take possession of all collateral for the payment of said notes as granted them by said security agreements[.]"
 
 
 [9]
 The parties agree that the trustee in bankruptcy stands in the shoes of Progressive and can only be successful in its efforts to rescind the contract if Progressive could have been successful. 11 U.S.C. Sec. 110(a)(6); Cissell v. American Home Assurance Co., 521 F.2d 790, 792 (6th Cir.1975), cert. denied, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976)
 
 
 [10]
 Appellants argue that Judge Collinson's remand order vacated the original bankruptcy court's judgment on damages and that therefore the bankruptcy court on remand could not rely on such findings regarding the amount of damages recoverable by Progressive. We find no support for such a proposition in law or in Judge Collinson's opinion. On remand, the bankruptcy court was free to reinstate the original bankruptcy court's judgment and rely on its finding and conclusions regarding the amount of damages recoverable by Progressive