Henry E. DOSS, Plaintiff–Respondent,

v.

SYNTEX AGRIBUSINESS, INC., Defendant–Appellant.

No. 19674.

Missouri Court of Appeals, Southern District, Division One.

June 15, 1995.

Stuart H. King, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for appellant.

Jim D. Loftis, James L. Menzer, Loftis & Menzer, P.A., Norman, OK, for respondent.

FLANIGAN, Judge.

Plaintiff Henry Doss brought this action against defendant Syntex Agribusiness, Inc., seeking recovery of amounts allegedly owing by defendant under an agreement, entered

into on May 27, 1988, which this opinion will call A–II. Plaintiff refers to A–II as a lease. Defendant was named as lessee in A–II. Plaintiff claims to be the assignee of the lessor. The property leased consisted of four items of copying equipment, the lease term was 60 months, and a monthly rental of $1,268.70 was payable by defendant.

After some discovery had been conducted, plaintiff filed a motion for summary judgment. Rule 74.04.[1] The trial court sustained the motion and entered judgment on May 19, 1994, in favor of plaintiff and against defendant in the sum of $47,758.72, which included an allowance of attorney's fees. The judgment referred to "the default date of July 26, 1991," and to "22 payments remaining." Defendant appeals.

■ Defendant contends that the trial court erred in sustaining the motion because there are material issues of fact with respect to whether A–II was terminated or modified by agreement, whether plaintiff was the assignee for value of A–II, and whether plaintiff breached his obligations under a prior agreement, entered into on May 13, 1988, which this opinion will call A–I. For the reasons which follow, this court holds that material issues of fact exist and that the trial court erred in granting the summary judgment.

■ On appeal from a summary judgment, the record is viewed in a light most favorable to the nonmoving party, and that party is granted the benefit of all favorable inferences. *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851, 852[1] (Mo. banc 1993). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." *Martin v. City of Washington,* 848 S.W.2d 487, 489[4] (Mo. banc 1993).

Plaintiff's motion was filed in February 1993. At that time, Rule 74.04 required that a motion for summary judgment "state with particularity the grounds therefor."[2] Plaintiff's motion, which was accompanied by affidavits, set forth the following grounds:

(1) On May 27, 1988, defendant executed A–II, a copy of which is attached and incorporated;

(2) On May 31, 1988, the lessor in A–II assigned its interest to Boatmen's National Bank of Springfield ("Boatmen's") for value, in good faith, and without any notice of claims or defenses to A–II;

(3) On March 1, 1991, Boatmen's assigned A–II to plaintiff for value;

(4) Defendant is in default in making the monthly payments due under A–II, and the amount currently owed is $31,657.24;

(5) A–II provides for acceleration of all amounts due and owing, and for possession by plaintiff of the equipment, upon any default;

(6) Boatmen's had no notice of any claim or defense existing at the time it purchased the lessor's interest in A–II.

In opposition to the motion, defendant filed the affidavit of its executive, Jerry Pierce. The Pierce affidavit refers to several corporations which figure in the complicated facts. This opinion will refer to those corporations as P–1, P–2, and P–3. They are: Doss Office Systems, Inc, P–1; Equity Rental Company, Inc., P–2, and RMP Service Group, Inc., P–3.

According to the Pierce affidavit, unchallenged by plaintiff, at the material times plaintiff was the sole owner of P–1 and P–3, and plaintiff owned and solely operated P–2. The foregoing designations are used in the following summary of the various writings.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

    In 1992, Missouri adopted the "Uniform Commercial Code—Leases" §§ 400.2A–101–532 (L.1992, S.B. No. 448, § A). Because A–I and A–II antedate the 1992 legislation, all references to statutes, except where otherwise indicated, are to RSMo 1986.

2. On remand, plaintiff may see fit to file a motion for summary judgment under the present Rule 74.04, which became effective January 1, 1994. The particularity requirement of the pre–1994 rule has been enhanced by the new one. See Rule 74.04(c). The detailed requirements of Rule 74.04(c)(1) and (2) might prove helpful in isolating, and perhaps resolving, the issues which the underlying maze of facts created.

**A–I**

Document on the letterhead of P–1, dated May 13, 1988, and entitled "Order S 134795." This document includes the following:

"Ship to Syntex Agribusiness, Inc.

"Sold to Jerry Pierce

"Description

60 month copier management program
Equipment: A.B. Dick 627 S/N
         Sharp 7300 SIN
Monthly minimum: $1,200.00 plus $68.70 tax
Total monthly payment: $1,268.70
Monthly copy allowance: 30,000
Copies per month: all copies over 30,000
  to be billed quarterly @ $.013
Includes: all service, parts, travel, labor;
  all consumable supplies, i.e. toner
  developer
Excludes: Paper, colored toner and
  colored developer
Includes lease buy out on Xerox 1048,
  not to exceed $8500.00
Addendum A is an integral part of this
  contract."

---

Addendum A was a letter dated May 6, 1988, from P–1 to defendant, which reads: "This letter will serve as your right to cancel your CMP agreement, with no penalty, with [P–1] on each anniversary date of your sales order. Also, [P–1] will pay off your lease on the Xerox 1048, not to exceed the amount of $8500.00."

**A–II**

Three-page document entitled "Lease No. 123," and bearing the number 535419.

Lessor: P–2.

Lessee: Defendant.

This document describes the property leased as follows:

| "Quan. | Model | Serial # | Description |
|---|---|---|---|
| 1 | K–627 | 535972 | A.B. Dick Copier |
| 1 | SF–7300 | 76653890 | Sharp Copier |
| 1 | 61–3062 | 536113 | Recirculating Docu. Feeder (A.B. Dick) |
| 1 | 61–3068 | 536211 | Finisher (A.B.Dick)" |

Lease term—60 months; total monthly payment $1,268.70.[3]

---

Other provisions include the following:

1. P–2 leases the personal property (leased equipment) described above to the Lessee for a term and at the rental set forth above. The first monthly installment of rent hereunder shall be payable on a date assigned by the Lessor following the date the

---

**3.** As the reader will note, the monthly payment under A–I is $1,268.70, and the same is true of the payment under A–II. The first is payable to P–1 and the second is payable to P–2. At oral argument, plaintiff's counsel was asked whether defendant was to make one or two monthly payments of $1,268.70. He stated only one payment was necessary. This appears inconsistent with plaintiff's argument that there is no relationship between A–I and A–II.

Leased Equipment is delivered to Lessee, and subsequent monthly installments of rent shall become due on the same day in each succeeding month.

2. Lessor makes no warranty of any kind, express or implied, with respect to the leased equipment, and specifically there is no warranty of merchantability or of fitness for a particular purpose. No unfitness of the equipment or any other circumstances shall relieve Lessee of its obligations under this Lease which are absolute and unconditional. This is a non-cancelable Lease for the full term shown above. Lessee understands and agrees that Lessor's rights, but not its obligations, under this Lease Agreement will be assigned in accordance with, and pursuant to, the provisions of paragraph 13.

4. This Lease constitutes the entire agreement of the parties with respect to the subject matter thereof, may not be changed or modified except in writing, and shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto. No representations, warranties, promises, guarantees or agreements, oral or written, express or implied, have been made by either party hereto with respect to this Lease of the Leased Equipment other than as set forth herein. This lease may only be modified, extended or renewed by a writing signed by the parties hereto.

10. Lessee will keep the Leased Equipment in good repair and first class mechanical condition without cost or liability to the Lessor.

13. Lessor may without the consent of the Lessee at any time assign this lease or all or any portion of Lessor's right hereunder (including without limitation its right to receive rent) completely or as security for any obligation or otherwise. The assignee of any of Lessor's rights hereunder shall be under no obligation to perform any of Lessor's duties, and such duties shall remain the full liability of Lessor. The rights of any such assignee in and to the rents shall not be subject to any abatement and shall not be subject to any defense, setoff, counterclaim or recoupment for any cause whatsoever, it being the intent hereof that Lessee shall be unconditionally and absolutely obligated to pay any such assignee hereof all of the rents provided for by this Lease and assigned to such assignee.

Page 3 of this document contained a receipt, signed by defendant, acknowledging receipt of the first two of the four items listed on page 1.

The Pierce affidavit also included the matters set forth in the following five paragraphs.

I have personal knowledge of the matters set forth herein. On numerous occasions following the execution of A–II, the parties agreed, and P–2 and its assignees acknowledged, that P–2 and its assignees were responsible, at their cost, for the upkeep of the equipment, and that defendant was entitled to an offset for any unreasonable loss of use of the equipment.

At all times during which Boatmen's held A–II, it or its agent provided all repairs and services in connection with the upkeep of the equipment in accordance with the terms of the modification of A–II. Boatmen's agents in connection with the repair and upkeep of the equipment included CopyTech through approximately May 15, 1990, and P–3 at all relevant times thereafter.

After March 1, 1991, P–3 maintained the subject copying equipment at its cost. At all times while the copying equipment was in the possession of defendant, the equipment failed to perform as represented, and defendant suffered unreasonable and costly loss of use of the equipment.

"Complete and executed assignment documents have not yet been produced to Defendant in evidence of the assignment alleged by Plaintiff. Further, Defendant has received notice from multiple other parties, including [P–3] and the Bank of Oklahoma that they are the assignees of [A–II]. Upon receipt of notice of assignment and demand from multiple parties, Defendant requested each party to show evidence of assignment. Neither Plaintiff nor any other party has done so."

"On or about June 14, 1991, [P–3], as the owner of the equipment or as agent on behalf of the owner, entered into an agreement with Defendant wherein Defendant agreed to return the subject copying equipment and [P–3] agreed to terminate [A–II]. At the time

of the termination of [A–II], Defendant had paid all amounts due thereunder, less any agreed upon amounts as an offset for unreasonable loss of use. Thus, Defendant is not now and has never been in default under [A–II]."

On June 14, 1991, a document entitled "Equipment Release," bearing the letterhead of P–3, was signed by the service manager of P–3 and by a representative of defendant. The body of that document reads:

"On this day, June 14, 1991, the following equipment:

| ABDICK K627 | S/N 535972 |
| Accessories: | RDH and Finisher |
| | 61–3062   S/N 536113 |
| | 61–3068   S/N 536211 |

Was picked up by [P–3], from:

Syntex Agribusiness."

---

In this court, plaintiff's brief says: "On June 14, 1991, a portion of the equipment was released from [defendant] to [P–3] on behalf of Doss (plaintiff)."

As stated in footnote 1, Missouri, in 1992, adopted the "Uniform Commercial Code—Leases." §§ 400.2A–101–532 RSMo 1994. The new legislation is based on Art. 2A of the Uniform Commercial Code.

Plaintiff takes the position, as he did in the trial court, that A–II is governed by Art. 9 of the Uniform Commercial Code (§§ 400.9–101–507), dealing with secured transactions. Plaintiff's brief says: "Assignment of a lease like the one [A–II] before the court is governed by § 409.9–206(1).... [A–II] acquired by Doss from Boatmen's is chattel paper, as defined by V.A.M.S. § 400.9–105.... V.A.M.S. § 400.9–301, in effect, has adopted the shelter principle, with regard to security interests and secured parties, which by definition is a lease, and a person to whom a lease has been sold, respectively."

Assuming, arguendo, that Art. 9 applies to A–II and any assignment of it,[4] some sections of Art. 1 and Art. 9 merit discussion.

Section 400.1–201 defines terms used in the Uniform Commercial Code, (including Art. 9), and reads, in pertinent part:

"(44) [A] person gives 'value' for rights *if* he acquires them

(a) in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection; or

(b) as security for or in total or partial satisfaction of a pre-existing claim; or

(c) by accepting delivery pursuant to a pre-existing contract for purchase; or

(d) generally, in return for any consideration sufficient to support a simple contract." (emphasis added).

Section 400.1–201 also contains the code definition of "security interest," which reads, in pertinent part:

"(37) 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.... The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to article 9.... *Whether a lease is intended as security is to be determined by the facts of each case....*" (emphasis added).

Section 400.9–206 reads, in pertinent part:

"(1) ... [A]n agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he

---

**4.** See, generally, 76 ALR3d 11—"Equipment Leases as Security Interest within Uniform Com-

mercial Code, § 1–201(37)".

may have against the seller or lessor is enforceable by an assignee *who takes his assignment for value, in good faith and without notice of a claim or defense,* except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on commercial paper (article 3)." (emphasis added).

Section 400.9–105 reads, in pertinent part:

"(1) In this article unless the context otherwise requires:

(a) 'Account debtor' means the person who is obligated on an account, chattel paper, *contract right or general intangible.*"

Section 400.9–318 reads, in pertinent part:

"(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 400.9–206 the rights of an assignee are subject to

(a) all the terms of the contract between the *account debtor and assignor* and any defense or claim arising therefrom; and

(b) any other defense or claim of the account debtor against the assignor which accrues *before the account debtor receives notification of the assignment.*

(2) So far as the right to payment under an assigned contract right has not already become an account, and notwithstanding notification of the assignment, any *modification of or substitution for* the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee *unless the account debtor has otherwise agreed* but the assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that such *modification or substitution is a breach by* the assignor.

(3) The account debtor is authorized to pay the assignor until the *account debtor* receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. *If requested by the account debtor, the assignee must season-ably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."* (emphasis added).

Plaintiff's motion claimed that on March 1, 1991, Boatmen's assigned A–II to plaintiff for value. The motion makes no reference to a parol assignment. Banks usually do not conduct business solely by parol. No written assignment accompanied the motion and, according to the Pierce affidavit, plaintiff had not honored defendant's request to produce it. There is no proof of what writing, if any, effectuated the alleged assignment of A–II from Boatmen's to plaintiff. Plaintiff did not produce the original A–II, and there is no claim that it bears any type of endorsement purporting to constitute an assignment of it.

Plaintiff's motion was accompanied by an affidavit of Beverly Jones, Assistant Vice President of Boatmen's and custodian of Boatmen's records. That affidavit stated, in part, "[A–II] and all related rights arising therefrom was subsequently purchased for value from Boatmen's [by plaintiff] on March 1, 1991." The affidavit of plaintiff, attached to his motion stated: "On or about March 1, 1991, I purchased, for value, [A–II] from Boatmen's."

Neither affidavit recited what it was, if anything, which constituted the "value" which plaintiff allegedly gave Boatmen's for its assignment of A–II. Whether anything was given and, if so, whether it satisfied any one of the four definitions of value contained in § 400.1–201(44) is not shown. Similarly, there was no showing of what "value" Boatmen's gave P–2 for the P–2–to–Boatmen's assignment, which was attached to Jones' affidavit.

In addition to issues concerning the contents, or even existence, of the Boatmen's-to-plaintiff assignment, and whether the P-2-to-Boatmen's or Boatmen's-to-plaintiff assignments were for value, other factual issues exist. If Boatmen's status with respect to the leased equipment, and its upkeep, was merely that of lessor under A–II, why did Boatmen's and its alleged assignee, plaintiff, repair and maintain the equipment? Why did plaintiff fail to honor defendant's request for reasonable proof of the Boatmen's-to-

plaintiff assignment, as required by § 400.9–318(3)? The close relationship between plaintiff and P–1, P–2, and P–3 adds to the complexity of the situation and may weaken or destroy his assertion that he is a "holder in due course" of the lessor's rights under A–II.

Provisions of A–II include purported limitations on the right of the parties to modify it (paragraph 4), and to insulate an assignee from an obligation to perform any of lessor's duties (paragraph 13). Plaintiff relies on those provisions to support its position.

This court, in *Fritts v. Cloud Oak Flooring Company*, 478 S.W.2d 8 (Mo.App.1972), said, *Id.* at 14[5]:

"[P]arties to a contract cannot, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision."

Accord: *DeMean v. Ledl,* 796 S.W.2d 415, 419 n. 5 (Mo.App.1990).

The Pierce affidavit is to the effect that A–II was, by agreements between defendant and Boatmen's and its assignees, modified to include A–I and later terminated. This court holds that issues of material facts exist which preclude the sustention of plaintiff's motion filed in 1993, and that the trial court erred in ruling otherwise.

The judgment is reversed and the cause remanded.

SHRUM, C.J., and PREWITT, J., concur.